Amanda E. Heitz (Bar No. 026519)
**BOWMAN AND BROOKE LLP**
Suite 1600, Phoenix Plaza
2901 North Central Avenue
Phoenix, AZ 85012-2761
Telephone: (602) 643-2300
Facsimile: (602) 248-0947
amanda.heitz@bowmanandbrooke.com
Minute Entries: mme@phx.bowmanandbrooke.com

Christopher Renzulli (*pro hac vice* to be submitted)
Scott C. Allan (*pro hac vice* to be submitted)
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
Facsimile: (914) 285-1213
crenzulli@renzullilaw.com
sallan@renzullilaw.com

Attorneys for Petitioner Chambered Group USA, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chambered Group USA, LLC,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>Kristina Babcock, Director of Industry Operations for the ATF's Phoenix Field Division,<br><br>　　　　Respondent. | **PETITION FOR DE NOVO REVIEW OF THE REVOCATION OF A FEDERAL FIREARMS LICENSE PURSUANT TO 18 U.S.C. § 923(f)(3)** |

1.    This Petition is brought by Chambered Group USA, LLC ("Chambered Group"), seeking a de novo review of a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on July 11, 2023 ("Final Notice of Revocation") revoking its federal firearms license ("FFL"). To the extent that any of the transactions identified in the Final Notice of Revocation even constitute violations of the Gun Control Act ("GCA"), such violations were not willful, and the ATF was therefore not authorized to issue the Final Notice of Revocation.

///

## PARTIES

2. Petitioner Chambered Group holds a type 07 FFL, No. 9-86-013-07-4A-07852, for its premises located at 15605 West Roosevelt Street, Suite 113, Goodyear, AZ 85338.

3. Respondent, Kristina Babcock, is the Director of Industry Operations ("DIO") for the ATF's Phoenix Field Division, located at 40 North Central Avenue, Suite 1000, Phoenix, AZ 85004.

## JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 923(f)(3), which authorizes de novo review of the Final Notice of Revocation.

5. Chambered Group has exhausted all of its administrative remedies pursuant to 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74, et al.

## BACKGROUND OF CHAMBERED GROUP

6. Chambered Group has continuously held a type 07 (Dealer in Firearms Other Than Destructive Devices) FFL since 2014.

7. The owners of Chambered Group at the time it obtained its FFL were Jay Fern, Cole Kelly, and John Fillman, and they were the initial responsible persons on Chambered Group's FFL.

8. Around August of 2018, John Lamontagne purchased Cole Kelly's and John Fillman's shares in Chambered Group as an investment, thereby becoming the majority shareholder.

9. John Lamontagne was not an employee of Chambered Group, and was not involved in the management and policies of Chambered Group related to firearms, or otherwise regularly involved in the operation of its business.

10. Based solely on his majority ownership interest as an investor in Chambered Group, John Lamontagne was added to its FFL as a responsible person as required by law.

11. The ATF conducted its first compliance inspection of Chambered Group in 2018, which resulted in a report of violations, which was closed without any further administration action, such as a warning letter being issued, or a warning conference being held.

12. The ATF conducted a second compliance inspection of Chambered Group in 2019, which resulted in a report of violations, which was closed by a warning conference between Mr. Fern and an ATF Area Supervisor.

13. The ATF conducted a third compliance inspection of Chambered Group in 2021.

14. Chambered Group had significantly improved since its 2019 inspection, as a result of which the ATF issued a report of violations, which was closed without any further administrative action.

15. The ATF conducted a fourth compliance inspection of Chambered Group beginning on April 11, 2022, which covered a standard one-year period, from April 11, 2021 through April 11, 2022.

16. Part of the period covered by this compliance inspection was during the coronavirus pandemic, during which demand for firearms was significantly increased.

17. Due to the increased demand for firearms caused by the coronavirus pandemic, Chambered Group transferred significantly more firearms than in prior years, without any increase in staffing.

18. During the period from April 11, 2021 through April 11, 2022 covered by this inspection, Chambered Group completed 1,930 Form 4473s (the Firearms Transaction Record that must be completed when transferring a firearm to someone who does not have an FFL), and transferred 2,113 firearms.

19. The ATF issued a Report of Violations on April 25, 2022.

20. Based on the April 25, 2022 Report of Violations, Respondent issued a Notice to Revoke or Suspend License and/or Impose a Civil Fine on December 14, 2022 ("Notice to Revoke").

21. In response to the Notice to Revoke, Chambered Group timely requested a hearing pursuant to 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74.

/ / /

/ / /

/ / /

## CURRENT ATF FFL REVOCATION HEARINGS BASED ON THE
## BIDEN ADMINISTRATION'S ZERO TOLERANCE POLICY
## DO NOT COMPORT WITH DUE PROCESS REQUIREMENTS

22. The ATF originally had an independent hearing officer preside over an administrative hearing requested in response to a notice to revoke an FFL pursuant to 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74.

23. As explained in ATF "Hearing Procedures Relating to Federal Firearms Licensees" (2010R-2T), 75 Fed. Reg. 48632, at 48365, a hearing officer would be chosen to preside over the hearing and then issue a report containing findings of fact and conclusions of law, and a recommended disposition.

24. In order to ensure that the licensee received a fair hearing in accordance with its right to due process, prior to assigning a hearing officer, the Chief of the ATF's Firearms and Explosives Services Division was required to "consider whether there is reasonable cause to believe that the hearing officer's ability to conduct a fair and impartial inquiry is impaired by the hearing officer's prior knowledge of the case or interactions with the applicant/licensee." *Id.* at 48363. In order to "ensure impartiality, the hearing officer will generally be appointed from outside the applicant's/licensee's division . . . ." *Id.*

25. Having an independent hearing officer was important to protect a licensee's due process rights because FFL revocation hearings are not subject to the protections provided by the Administrative Procedures Act, 5 U.S.C. §§ 551-59 ("APA"), because the decision is subject to de novo review in federal court.

26. The ATF subsequently eliminated its use of independent hearing officers and the DIO who issued the initial notice to revoke an FFL now serves as the hearing officer. *See* ATF Final Rule "Federal Firearms License Proceedings—Hearings," 99 Fed. Reg. 32230, at 32231.

27. Pursuant to 28 U.S.C. § 923(e), the ATF is only authorized to revoke an FFL based on a willful violation of the GCA.

28. The limitation on the ATF's authority to revoke an FFL was added to the GCA by the Firearm Owners Protection Act, 100 Stat. 449, Pub. Law 99-308, ("FOPA") based on the

concern of Congress that the ATF had been improperly revoking FFLs based on unintentional violations of the GCA.

29. The FOPA and the GCA do not define the term "willful" as it relates to a violation of the GCA.

30. The U.S. Court of Appeals for the Ninth Circuit has held that a "mere mistake or negligence" is not sufficient to revoke an FFL. *General Store, Inc. v. Van Loan*, 560 F.3d 920, 923 (9th Cir. 2009).

31. An FFL holder's violation of the GCA only rises to the required level of a willful violation when it either knowingly fails to follow the requirements of the law, or was plainly indifferent to or recklessly disregarded the requirements of the law, each of which require a showing of "conscious indifference to the consequences of an act." *General Store*, 560 F.3d at 923-24 (citation and emphasis omitted).

32. The ATF has the discretion to not revoke an FFL even if it determines that a licensee willfully violated the GCA. 18 U.S.C. § 923(e).

33. On June 23, 2021, the Biden Administration announced a "zero tolerance" policy, pursuant to which:

> ATF will seek to revoke the licenses of dealers the first time that they violate federal law by willfully 1) transferring a firearm to a prohibited person, 2) failing to run a required background check, 3) falsifying records, such as a firearms transaction form, 4) failing to respond to an ATF tracing request, or 5) refusing to permit ATF to conduct an inspection in violation of the law.

https://www.whitehouse.gov/briefing-room/statements-releases/2021/06/23/fact-sheet-biden-harris-administration-announces-comprehensive-strategy-to-prevent-and-respond-to-gun-crime-and-ensure-public-safety/

34. Although the "zero tolerance" policy uses the term "willfully," in actuality, it treats any of the five specified violations as automatically having been committed willfully.

35. On January 28, 2022, the ATF issued Order 5370.1E5, entitled "Federal Firearms Administrative Policy and Procedures."

36. Section 7(e)(2) of Order 5370.1E5 states that the "ATF will revoke a federal

firearms license, absent extraordinary circumstances on initial violations, if those <u>violations inherently demonstrate willfulness</u>, such as . . . failing to run a background check prior to transferring a firearm to a non-licensee . . . ." (Emphasis added).

37. In addition to inherently deeming certain violations to have been willfully violated, Section 7(e)(4) states that the:

> ATF can establish the knowledge element of willfulness in several ways:
>
> (a) Establish the FFL has a history of similar, repeat violations, and documentation that an IOI [Industry Operations Investigator] discussed them with the FFL. The FFL's compliance history can include other efforts by ATF (including qualification inspections) to inform the FFL about its legal responsibilities.
>
> (b) Use inspection reports to establish willfulness even if the inspection found no violations (i.e., acknowledgement of Federal firearms regulations).
>
> (c) Statements or admissions communicated by the FFL or its employee(s), as well as actions by the FFL or its employee(s) during an inspection that demonstrate knowledge of regulations and concurrence with the IOI's findings.
>
> (d) Publications and information provided to the FFL which explain the FFL's legal responsibilities.
>
> (e) Demonstrate that the FFL has complied with the specific regulation on other occasions.
>
> (f) Demonstrate that the FFL has substantial experience as an FFL.

38. The above does not come close to establishing that a violation was willfully committed as such term is used in the Ninth Circuit, but rather establishes strict liability, pursuant to which the mere existence of an error results in it being considered to have been willfully committed.

39. The lack of the protections afforded to licensees during an FFL revocation hearing is allegedly justified on the basis that a decision revoking an FFL is subject to de novo review in U.S. district court within sixty days of a decision revoking an FFL. *See* 5 U.S.C. § 554(a)(1); 18 U.S.C. § 923(f)(3); ATF Final Rule "Federal Firearms License Proceedings—Hearings," 99 Fed. Reg. at 32233.

40. A licensee's right to due process is violated if it is unable to secure de novo judicial

6

review of a final decision revoking its FFL before the revocation becomes effective and prevents the licensee from continuing its business.

**EVIDENCE PRESENTED DURING THE APRIL 13, 2023 REVOCATION HEARING**

41. A revocation hearing was held on April 13, 2023, at the ATF's Phoenix Field Division in Phoenix, Arizona.

42. Although Respondent had issued the Notice to Revoke setting forth the grounds on which the ATF sought to revoke Chambered Group's FFL for alleged willful violations of the GCA, Respondent also served as the hearing officer for the April 13, 2023 revocation hearing.

43. Stated differently, Respondent brought the charges against Chambered Group, and then served as the hearing officer to determine whether she had been correct in bringing such charges.

44. Industry Operations Investigator ("IOI") Terri Garzda was the ATF's sole witness during the April 13, 2023 revocation hearing.

45. IOI Garzda testified that Chambered Group had no issues related to responding to trace requests, or reporting multiple sales, and that there was no information suggesting that Chambered Group's business practices contributed to the diversion of firearms to criminals.

46. IOI Garzda further testified that there were no concerns that Chambered Group was selling to straw purchasers, or firearms traffickers.

47. Based on her inspection of Chambered Group, IOI Garzda concluded that it did not appear that Chambered Group had intentionally made any of the errors cited in the April 25, 2022 report of violations, and that she believed that Chambered Group is willing and able to be compliant with requirements of the GCA.

48. Jayson Fern was Chambered Group's sole witness during the April 13, 2023 revocation hearing.

49. In addition to testifying why none of the violations cited in the April 25, 2022 Report of Violations had been willfully committed, he testified regarding substantial changes

7

that Chambered Group had made to its business to prevent such violations from occurring in the future.

50. Among other things, Chambered Group has adopted electronic 4473 form software, a firearms transaction checklist, and retained a regulatory compliance specialist to do a full audit of its procedures.

51. Chambered Group also submitted a compliance action plan, pursuant to which it agreed to allow the ATF to conduct as many compliance inspections as it wanted over a year long period to ensure that such procedures were properly working. Absent such an agreement, the ATF is only permitted to conduct one compliance inspection in a twelve month period. 18 U.S.C. § 923(g)(1)(B)(ii); 27 C.F.R. § 478.23(b)(2)(i).

52. On July 11, 2023, Respondent issued the Final Notice of Revocation that is the subject of this petition for de novo review.

53. In the Final Notice of Revocation, Respondent determined that Chambered Group's FFL was subject to revocation on the basis that it had willfully violated three categories of regulations adopted by the ATF pursuant to the GCA: (1) 27 C.F.R. § 478.102; (2) 27 C.F.R. §§ 478.123(b) & 478.123(a); and (3) 27 C.F.R. §§ 478.124(c)(1), 478.21(a), & 478.124(c)(3)(iv).

54. The first violation relates to a transfer of a firearm to a customer less than three full business days after receiving a response of delayed from the National Instant Criminal Background Check System ("NICS").

55. Chambered Group conducted a background check to transfer a firearm to a customer on Saturday, April 17, 2021, and received a response of delayed from NICS.

56. Pursuant to the GCA, Chambered Group was required to wait three full business days, or until Thursday, April 22, 2021, to transfer the firearm to the customer, unless the response from NICS changed to a proceed or denied before that time.

57. During the April 13, 2023 hearing, Mr. Fern testified that pursuant to Chambered Group's policies and procedures, the customer would not have been called to pick up the firearm until after the full three business day waiting period had expired, unless the delayed response

changed to a proceed in the interim.

58. There is no evidence to dispute that the NICS check ultimately resulted in a proceed result for this customer.

59. There was no first-hand account of when the transfer occurred with relation to the NICS proceed result. The Form 4473 shows that the firearm was transferred on April 20, 2021, and Chambered Group presented evidence that its policy was to not contact a customer to pick up a firearm for which an initial response of delayed was received from NICS, unless it changed to a proceed, or the full three business day waiting period had expired.

60. Based on the above, it is more probable than not that the results of the customer's NICS check changed to a proceed before the firearm was transferred on April 20, 2021, even though there is a mark by the box stating "No response was provided within 3 business days."

61. Alternatively, if the firearm was transferred before the NICS response was changed to proceed, Mr. Fern testified that the error was due to a simple miscalculation of the waiting period by counting calendar days instead of business days.

62. Chambered Group employs military veterans, including the disabled veteran who made this transfer. This employee lost part of his stomach and lower intestine in service of his country and occasionally struggles with pain when his medication refills are delayed.

63. There is no evidence that this employee had ever miscalculated the time for the waiting period on any other occasion.

64. Additionally, the transfer was made during the time when the country was in the coronavirus pandemic, when demand for firearms was high and workers were stretched.

65. Under these circumstances the facts show that if the transfer occurred before Chambered Group received a proceed from NICS, it was due to an inadvertent miscalculation of the waiting period, and the Ninth Circuit has held that a mere mistake does not constitute willfulness.

66. Despite the above, based on the potential that the employee that transferred the firearm may have miscalculated the waiting period, Respondent concluded that Chambered Group willfully violated the GCA because it was aware that this employee had medical issues

that may have contributed to the violation – to the extent that the NICS check had not changed to a proceed before the transfer.

67. The second category of violations relates to twelve firearms for which the acquisition and/or disposition was not timely and/or accurately recorded in its acquisition and disposition ("A&D) records in violation of 27 C.F.R. §§ 478.123(b) & 478.123(a).

68. The acquisitions/dispositions of those firearms that had not been recorded at the time of the 2022 compliance inspection were all reconciled, and all errors in the entries were corrected, prior to the issuance of the April 25, 2022 Report of Violations.

69. Based on the fact that it had transferred 2,113 firearms during the period covered by the compliance inspection, and only had twelve errors identified in its A&D records, Chambered Group had properly and correctly completed the entries in its A&D records 99.43% of the time.

70. Nevertheless, Respondent concluded that these violations were willfully committed because Chambered Group was "aware of process and recordation issues and failed to implement additional measures to prevent these violations from occurring."

71. This incorrectly imposed a strict liability standard – i.e., the violations occurred, therefore they were willful.

72. The third and final category of violations relates to twenty-four Form 4473s, in which the responses to a total of forty-six of the items were blank, incomplete, or incorrect in violation of 27 C.F.R. §§ 478.124(c)(1), 478.21(a), & 478.124(c)(3)(iv).

73. During the period covered by the compliance inspection, Chambered Group had completed 1,930 Form 4473s, and had errors on only twenty-four of them, meaning that 98.76% of the Form 4473s completed by Chambered Group had no errors.

74. None of the transferees/buyers on the Form 4473s with errors were persons prohibited by the GCA from purchasing or possessing firearms.

75. The errors on twenty of the twenty-four Form 4473s were corrected prior to the April 13, 2023 revocation hearing.

76. One of the Form 4473s cited in the third category of violations related to a

customer who had completed a Form 4473 on October 8, 2021 and allegedly left item No. 21.k., which asks "Are you an alien **illegally** or **unlawfully** in the United States?," blank.

77. The customer who had completed that form had indicated in response to other items on the Form 4473 that he was born in Phoenix, Arizona, was a citizen of the United States, and had never renounced his U.S. citizenship, and had, in fact, marked the "no" box in response to item No. 21.k.

78. Despite the fact that there was not even a violation related to item No. 21.k. on the October 8, 2021 Form 4473, Respondent concluded that Chambered Group had willfully committed the non-existent violation. Final Notice of Revocation, Findings of Fact ¶ 3.d and Conclusions of Law ¶¶ 9, 11 & 14. With regard to those forms that actually contained errors, Respondent concluded that they were willfully committed simply because Chambered Group had errors on Form 4473s during prior compliance inspections, and still had errors.

79. Respondent's decision imposed a strict liability standard that is akin to an argument that if you have had a typographical error in a court document in the past, and you have one again in the future, such error was willfully committed. It does not account for the fact that humans make mistakes, and the Ninth Circuit has held that "mere mistakes" do not constitute willfulness.

80. Chambered Group did not willfully violate the GCA in connection with any of the three categories of violations identified in the Final Notice of Revocation.

81. Based on the evidence presented during the April 13, 2023 revocation hearing, there is no factual support for the ATF's conclusion that Chambered Group willfully violated the GCA, as opposed to having made mere mistakes with regard to the completion of certain entries in its A&D records and Form 4473s, which, at most, amounted to negligence.

82. Upon information and belief, Respondent revoked Chambered Group's FFL pursuant to the requirements set forth in Section 7(e) of ATF Order 5370.1E5 because of the transfer of a firearm to a customer on April 20, 2021, three days after having submitted a background check to NICS, but less than three full business days.

83. Pursuant to the Biden Administration's zero tolerance program, Respondent

revoked Chambered Group's FFL, not based on any willful violations of the GCA, but rather pursuant to a strict liability policy, pursuant to which if a licensee had a prior violation, a subsequent violation is automatically considered to be willful.

**REQUEST FOR STAY OF THE EFFECTIVE DATE OF THE FINAL NOTICE OF REVOCATION**

84. Chambered Group received a copy of the Final Notice of Revocation on July 17, 2023. The Final Notice states that it is effective fifteen days after receipt, or August 1, 2023.

85. Chambered Group's personal representative, who had appeared on its behalf during the April 13, 2023 revocation hearing, requested an extension of the revocation date of Chambered Group's FFL.

86. In a letter dated July 26, 2023, Respondent agreed to extend the effective date of Chambered Group's FFL until October 1, 2023, but with the condition that it "not manufacture or acquire any firearms for the business after the date of the original revocation (August 01, 2023)."

87. After being retained, counsel for Chambered Group advised Respondent of its intention to file this petition for de novo review of the Final Notice of Revocation and requested that the effective date of the revocation of its FFL (including the ability to continue to manufacture and acquire firearms) be postponed until the completion of these judicial proceedings as authorized by 28 U.S.C. § 478.78.

88. Respondent advised that she would not agree to extend the effective date of the revocation of Chambered Group's FFL to allow it to continue conducting its regular business while it pursues a petition for de novo review pursuant to 18 U.S.C. § 923(f)(3). No explanation for the refusal was provided, despite that fact Chambered Group has been conducting business for almost a year and a half since the violations upon which its FFL is being revoked are alleged to have been committed, and regulations specifically authorize such a stay.

89. Chambered Group did not willfully violate the GCA or regulations issued thereunder and therefore Respondent was not authorized to revoke its FFL.

90. Respondent's refusal to allow Chambered Group to continue to operate its

business as an FFL while its petition for a de novo review of the Final Notice of Revocation is a deprivation of its right to due process.

91. In order to prevent its business from being closed before being afforded the required due process through de novo judicial review of the Final Notice of Revocation, the effective date of the revocation of Chambered Group's FFL must be stayed pending completion of this action.

WHEREFORE, Chambered Group respectfully prays that this Honorable Court:

(A) reverse the Final Notice of Revocation and hold that Respondent was not authorized to revoke its FFL pursuant to 18 U.S.C. § 923(e);

(B) Stay the effective date of the revocation of its FFL so that it can continue to conduct its business, including manufacturing and acquiring firearms, while this case is pending; and

(C) grant such other relief as it deems just and proper.

DATED this 1st day of September, 2023.

**BOWMAN AND BROOKE LLP**

By: */s/ Amanda E. Heitz*
Amanda E. Heitz

and

**RENZULLI LAW FIRM, LLP**
Christopher Renzulli (*pro hac vice* to be submitted)
Scott C. Allan (*pro hac vice* to be submitted)

Attorneys for Petitioner Chambered Group USA, LLC