**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chambered Group USA LLC,<br><br>     Petitioner,<br><br>vs.<br><br>Kristina Babcock,<br><br>     Respondent. | No. CV-23-01850-PHX-SPL<br><br>**ORDER** |

  Before the Court is Petitioner's Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction. (Doc. 2). On September 5, 2023, the Court denied the Motion for TRO. (Doc. 8). For the following reasons, the Court also denies the Motion for Preliminary Injunction.

**I. BACKGROUND**

  Petitioner Chambered Group USA, LLC ("Chambered Group") has continuously held a type 07 (Dealer in Firearms Other Than Destructive Devises) federal firearms license ("FFL") since 2014. (Doc. 2 at 2). As of August 2018, John Lamontagne and Jay Fern were the only owners and responsible persons on Chambered Group LLC's FFL. (Doc. 1 at 2, ¶¶ 7–10).

  The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") conducted four compliance inspections at Chambered Group. (Doc. 1 at 2–3, ¶¶ 11–15). The initial compliance inspection in 2018 resulted in a report of eight cited violations, (Sept. 19, 2023 Preliminary Injunction Hearing Exhibit ("Ex.") 116), and the matter was closed without

any further administrative action (Doc. 1 at 2, ¶ 11). In 2019, the second compliance inspection resulted in a report of ten cited violations and was closed with a warning conference between Mr. Fern and an ATF Area Supervisor. (Doc. 1 at 3, ¶ 12; Ex. 118). And in 2021, the compliance inspection resulted in a report of four cited violations and was once again closed without any further administrative action. (Doc. 1 at 3, ¶ 13; Ex. 122).

The fourth compliance inspection (the "Final Inspection") in 2022, covered a standard one-year period, beginning April 11, 2021. (Doc. 1 at 3, ¶ 15). Petitioner alleges that during this period the coronavirus pandemic caused the demand for firearms to increase significantly. (Doc. 1 at 3, ¶ 16). Moreover, Petitioner alleges that this increase in demand caused it to transfer significantly more firearms than in prior years without any increase in staffing. (Doc. 1 at 3, ¶ 17).

On April 25, 2022, the ATF issued Petitioner a report citing nine violations for the Final Inspection. (Doc. 1 at 3, ¶ 19; Ex. 2). On December 14, 2022, Respondent Kristina Babcock, the ATF Director of Industry Operations in the Phoenix Field Division, issued Petitioner a Notice to Revoke or Suspend License and/or Impose a Civil Fine. (Doc. 1 at 3, ¶ 20). The notice cited violations related to background checks, acquisition and disposition records, and firearm transactions records. (Ex. 101). In response, Petitioner requested a hearing pursuant to 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74. (Doc. 1 at 3, ¶ 21).

On April 13, 2023, a revocation hearing was held, and Respondent served as the hearing officer. (Doc. 1 at 7, ¶¶ 41–43). On July 11, 2023, Respondent determined that Petitioner willfully violated the Gun Control Act of 1968 ("GCA"), 18 U.S.C. Chapter 44, and associated regulations, and issued a Final Notice of Denial of Application, Revocation, Suspension, and/or Fine of Firearms License (the "Final Notice of Revocation"). (Doc. 1 at 8, ¶¶ 52–53). Petitioner received the Final Notice of Revocation on July 17, 2023, and its FFL revocation was scheduled to take effect on August 1, 2023. (Doc. 1 at 12, ¶ 84).

Petitioner requested an extension of the revocation date and Respondent agreed to extend the effective date until October 1, 2023, but with the condition that Petitioner "not

manufacture or acquire any firearms for the business after the date of the original revocation (August 01, 2023)." (Doc. 1 at 12, ¶¶ 85–86). Petitioner, through its counsel, advised Respondent of its intention to file a petition for de novo review of the Final Notice of Revocation and requested that the revocation date be postponed until the completion of judicial proceedings. (Doc. 1 at 12, ¶ 87). Respondent denied this request. (Doc. 1 at 12, ¶ 88).

On September 1, 2023, Petitioner filed a Petition for De Novo Review of the Revocation of a Federal Firearms License Pursuant to 18 U.S.C. § 923(f)(3) (Doc. 1) and Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2). In its motion, Petitioner moves to stay the effective date of the revocation of its FFL pending the completion of de novo review. (Doc. 2 at 1). The Court denied the Motion for TRO on notice grounds and set an expedited briefing schedule and hearing on the Motion for Preliminary Injunction. (Doc. 8). The Motion is fully briefed. (Docs. 2, 13, 16).

On September 19, 2023, the Court held an evidentiary hearing at which it heard testimony from Chambered Group's owners, a Chambered Group employee, and Respondent. (Doc. 21). The Court has further reviewed the briefing, the parties' arguments, and the evidence received in the record, and now addresses the Motion for Preliminary Injunction.

**II.   LEGAL STANDARD**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (citation omitted). A party seeking injunctive relief under Rule 65 of the FRCP must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit observes a "sliding scale" approach that balances these elements "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies*

*v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, an injunction can issue where there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. Still, "[l]ikelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors in the absence of serious questions going to the merits." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal citations and quotation marks omitted).

### III. ANALYSIS

The ATF has authority, "'after notice and opportunity for hearing,' to revoke a FFL if the licensee 'has willfully violated' any provision of the GCA or the regulations promulgated thereunder." *Nat'l Lending Grp., LLC v. Holder*, 365 F. App'x 747, 748 (9th Cir. 2010) (quoting 18 U.S.C. § 923(e)). An aggrieved party seeking to reverse the revocation of its FFL may file a petition with the district court for de novo judicial review. *Id.* On review, the district court will decide whether the ATF was authorized to revoke the FFL, or in other words, whether the aggrieved party "willfully violated" the GCA. *See* 18 U.S.C. § 923(f)(3).

Petitioner asserts that the ATF did not have authority to revoke its FFL, and moves to stay the effective date of the revocation pending the completion of judicial review. The Court finds that Petitioner willfully violated the GCA, that all of the *Winter* factors favor Respondent, and that the Motion for Preliminary Injunction must therefore be denied.

#### a. Likelihood of Success on the Merits

"[A] violation of the Gun Control Act requires a willful violation that is a deliberate, knowing, or reckless violation of its requirements." *Gen. Store, Inc. v. Van Loan*, 560 F.3d 920, 924 (9th Cir. 2009) (internal quotation marks and citation omitted). "For purposes of the firearm licensing laws and regulations, a violation is willful if the license holder understands the requirements of the law but knowingly fails to follow those requirements or is indifferent to them." *Nat'l Lending Grp., L.L.C. v. Mukasey*, No. CV 07-0024-PHX-

4

PGR, 2008 WL 5329888, at *9 (D. Ariz. Dec. 19, 2008); *see Gen. Store, Inc.*, 560 F.3d at 924 (defining "indifference" and "reckless disregard" as "[c]onscious *indifference* to the consequences of an act." (alteration in original) (quoting Black's Law Dictionary 506 (8th Ed. 2004)). Thus, the ATF is authorized to revoke a licensee's FFL if there is evidence of willfulness. *See Nat'l Lending Grp.*, 365 F. App'x at 749.

Petitioner claims that the alleged violations set forth in the Final Notice of Revocation were the result of mistake and negligence, not willfulness. (*See* Doc. 2 at 5–12; Doc. 16 at 5). The evidence, however, shows that Petitioner has a history of repeated regulatory violations, which supports a finding that Petitioner willfully violated the GCA. *See Nat'l Lending Grp.*, 365 F. App'x at 749 ("[A] history of regulatory violations or an admission of culpability constitute evidence of willfulness."). These repeated violations include the following:

- In 2018, Petitioner had its first compliance inspection and was cited for *eight* GCA violations. (Ex. 116).
- In 2019, Petitioner had its second compliance inspection and was cited for *ten* GCA violations—*six* of which were repeat violations from 2018. (Ex. 118).
- In 2021, Petitioner had its third compliance inspection and was cited for *four* GCA violations—*all* of which were repeat violations from 2018. (Ex. 122).
- In 2022, Petitioner had its fourth compliance inspection and was cited for *nine* GCA violations—*eight* of which were repeat violations from either 2018, 2019, or 2021. (Ex. 2).[1]

Petitioner further claims this case is "strikingly similar" to a non-binding decision out of the 6th Circuit that enjoined the ATF from revoking an FFL.[2] (Doc. 2 at 3). In *Paducah Shooters Supply, Inc. v. Rogers*, the court determined that the ATF failed to

---

[1] The 2022 Report of Violations and the initial notice to revoke lists nine violations, but Respondent determined that three of the nine violations listed did not rise to the level of willfulness required for revocation. (Doc. 13 at 4 n.3; Ex. 2).

[2] *Paducah Shooters Supply, Inc. v. Rogers*, No. 5:23-CV-88-BJB, 2023 WL 5769364 (W.D. Ky. Aug. 12, 2023).

identify whether the licensee knew the rules, that the ATF's reasoning for revoking the license was insufficient, and that there was no evidence showing that the licensee did not care whether it violated the GCA. No. 5:23-cv-88-BJB, 2023 WL 5769364, *4, *8 (W.D. Ky. Aug. 12, 2023). Here, however, the record reflects that Petitioner was familiar with the GCA regulations and knew about the violations listed in the reports following each compliance inspection. (*See* Exs. 112, 113, 114, 115, 116, 121). And despite knowing this information, Petitioner repeatedly violated the same regulations over a short four-year period. (*Id.*). *See Paducah Shooters Supply*, 2023 WL 5769364 at *7 (considering the fact that the small number of violations were spread over a *seven*-year period when concluding that the petitioner's violations were not willful). Additionally, the court in *Paducah* held that the ATF failed to give sufficient reasoning for concluding that the violations were willful because the revocation order cited to "the entirety of the administrative record" without any additional details. *Paducah Shooters Supply*, 2023 WL 5769364 at *4. But that is not the case here—the Final Notice of Revocation lists specific explanations to support its basis for willfulness for each violation. (Ex. 1 at 5–6). Thus, the Court disagrees with Petitioner's argument that this case is like *Paducah*.

Instead, the Court finds that the record in this case is similar to records in cases where courts have upheld revocation and found that the licensees willfully violated the GCA.[3] Petitioner is an experienced FFL licensee and has held its license for nearly a

---

[3] Petitioner provides a case chart that lists cases where courts have upheld revocation and found that the licensees willfully violated the GCA. (Doc. 2 at 10-11). Petitioner argues that the cases are "strikingly dissimilar" to this case. The Court disagrees. *See e.g. McCallister v. United States*, No. 2:11CV00020 ERW, 2012 WL 381247, *4 (E.D. Mo. Feb. 6, 2012) ("Given the undisputed evidence demonstrating [Petitioner]'s awareness of the record-keeping requirements and his repeated failure to follow them, the Court concludes that summary judgment in favor of Respondent is appropriate."); *Pinion Enters., Inc. v. Ashcroft*, 371 F. Supp. 2d 1311, 1317 (N.D. Ala. 2005) ("Given Petitioner's long history as a license holder, his repeated failure to comply with regulations and his admitted understanding of the rules, the evidence was sufficient for the Attorney General to have concluded that the violations were willful."); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 415 F.3d 1274, 1278 (11th Cir. 2005) ("In light of the fact that [Petitioner] was aware of both its obligations under the firearms regulations and its previous violations, we conclude that there is no genuine issue of material fact about whether its continued and repeated failure to comply was willful."); *Shawano Gun & Loan, LLC v. Hughes*, No. 09-C-150, 2010 WL 3062847, at *6 (E.D. Wis. Aug. 2, 2010), aff'd,

decade. (Doc. 1 at 2, ¶ 6). Petitioner also signed several documents between 2014 and 2022 admitting that it knows the general GCA regulations and that it was responsible for reviewing all of the GCA laws and regulations. (Ex. 112). In 2018, Petitioner's first compliance inspection resulted in six violation citations due to insufficient record-keeping, failing to report firearm sales, and failing to properly complete firearms transactions records. (Ex. 116). The ATF notified Petitioner of these infractions and Petitioner provided corrective actions it would take to comply with the GCA. Petitioner, however, failed to follow its corrective actions plan and was cited for six of the same violations along with four new violations at the second compliance inspection. (Ex. 119). Thus, the ATF scheduled a mandatory warning conference and discussed the violations and proposed corrective actions with Petitioner to prevent these violations from reoccurring. (Doc. 13 at 7). The ATF also sent Petitioner a letter explaining that "future violations, repeat or otherwise, could be viewed as willful and may result in the revocation of your license." (Ex. 120). In 2021, following the third compliance inspection, Petitioner was cited for four violations, all of which were repeat violations from either 2018 or 2019. Again, the ATF informed Petitioner of these violations and Petitioner provided another plan for corrective

---

650 F.3d 1070 (7th Cir. 2011) ("[Petitioner] clearly knew his legal compliance obligation, especially as it related to repeat violations about which he received written warnings. This record supports only one conclusion: [Petitioner] purposefully disregarded or was plainly indifferent to the record-keeping requirements."); *Procaccio v. Lambert*, No. 5:05-MC-0083, 2006 WL 2090166, at *4 (N.D. Ohio July 25, 2006), aff'd, 233 F. App'x 554 (6th Cir. 2007) ("Petitioner does not dispute that the ATF consistently warned him about the particular record keeping violations, and that he continued to repeat the same violations over the course of his two decades in business."); *Athens Pawn Shop Inc. v. Bennett*, 364 F. App'x 58, 59–60 (5th Cir. 2010) ("Repeated violation of known legal requirements is sufficient to establish willfulness."); *T.T. Salvage Auction Co. Inc. v. Sec'y, U.S. Dep't of Treasury*, 859 F. Supp. 977, 980 (E.D.N.C. 1994) (finding that the violations were willful because the petitioner admitted to knowing the regulations and had a long history of noncompliance); *Cucchiara v. Sec'y of Treasury*, 652 F.2d 28 (9th Cir. 1981) (upholding revocation when petitioner had repeat violations despite knowing the requirements under the GCA and receiving multiple warnings); *Strong v. United States*, 422 F. Supp. 2d 712, 723 (N.D. Tex. 2006) ("He has persisted in violating the same requirements, even after the ATF pinpointed deficiencies to him, time and time again, through Reports of Violations. Such conduct epitomizes a "plain indifference" or disregard to the laws and regulations imposed upon firearms dealers and is a textbook section 923 "willful violation.""); *Gen. Store, Inc.*, 560 F.3d at 925 ("An initial use of a log in 2001, followed by two years of inaccurate or incomplete records leading up to the 2003 inspection, demonstrates The [Petitioner]'s indifference to its legal obligation.").

actions for preventing these reoccurring violations. In 2022, Petitioner failed once again at taking remedial actions to comply with the GCA, and Petitioner was cited for nine violations, eight of which were repeat violations from either 2018, 2019, or 2021. Soon after, Respondent issued Petitioner a Final Notice of Revocation which stated that Petitioner willfully violated six of the nine cited violations.

Respondent's testimony at the Preliminary Injunction hearing further supports that Petitioner's violations were willful. Respondent testified that the ATF's internal software program, which ensures any administrative action is consistent throughout field divisions, recommended revocation because Petitioner's record included multiple repeat violations. She further emphasized that these violations continued from 2018 to 2022 despite clear knowledge of the issues and alleged plans for in-house audits, demonstrating a clear indifference to their legal obligations. Petitioner seeks leniency by claiming that the 2022 violations are due to it not being able to handle the unexpected increase in business that inspection year. Respondent testified, however, that because Petitioner used this same excuse in 2021, Petitioner was aware that there were steps it needed to take to comply with the GCA. (Ex. 122 at 1).

Considering the record and briefings, and the oral arguments and testimonies at the Preliminary Injunction hearing, it is clear that Petitioner willfully violated the GCA. *See Nat'l Lending Grp., L.L.C.*, 2008 WL 5329888, at *10 ("Consequently, because it is clear that Plaintiffs knew the requirements, the number of failures demonstrates that they either decided not to follow the regulatory requirements, or they were indifferent to the requirements. Thus, the evidence establishes willful violations by Plaintiffs."); *see also Strong v. United States*, 422 F. Supp. 2d 712, 723 (N.D. Tex. 2006) ("The only reasonable inference that may be drawn is that [Petitioner] is habitually noncompliant."). Therefore, Petitioner is not likely to succeed on the merits.[4]

---

[4] To be clear, this factor is a threshold inquiry, therefore, the Court need not consider the remaining *Winter* factors. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter*] elements.]"

### b. Irreparable Harm

"To show irreparable harm, '[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.'" *Forefront Dermatology S.C. v. Crossman*, 642 F. Supp. 3d 947, 951 (D. Ariz. 2022) (alteration in original) (quoting *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). Petitioner argues that it will suffer irreparable harm if its Motion is denied because without the ability to sell firearms its business will cease to exist. (Doc. 2 at 13). But the Final Notice of Revocation provides Petitioner with the option to alleviate this alleged immediate harm by selling or consigning its inventory to another federal firearms licensee. (Doc. 13 at 12). Mr. Lamontagne, Chambered Group's owner, testified that it currently has mostly higher-end firearms that have been in its inventory for years because it is difficult to sell high-end firearms to everyday consumers. He estimated the retail value for these firearms to be anywhere between $3,000 and $5,000 for a single firearm. Petitioner also has firearm accessories that it can sell or consign. The Court finds that this factor likely weighs in favor of Respondent because Petitioner will still be entitled to conduct business, albeit, through a different market.

### c. Balance of Equities/Hardships and Public Interest

"[T]he district court must consider the public interest as a factor in balancing the hardships when the public interest may be affected." *Caribbean Marine Servs. Co.*, 844 F.2d at 674. A licensee's failure to follow the GCA regulations jeopardizes public interest because it poses a danger to society. Moreover, the public faces harm when licensees continuously repeat the same violations despite receiving multiple opportunities to improve. Petitioner argues that its repeated violations should not be considered a public threat because they were due to mere mistake or human error. Respondent's testimony, however, illustrates that inadvertent recordkeeping mistakes may harm the public by impeding law enforcement's ability to trace firearms during crime investigations or

(internal quotation marks and citation omitted) (alteration in original)).

resulting in a firearm being transferred to a prohibited individual. Furthermore, the Court rejects Petitioner's argument that the alleged violations do not present a "direct threat to public safety" because the ATF should not have to wait until the repeat violations cause direct harm to the public. (*See* Ex. 1 at 3) (citing Petitioner for failing to withhold transferring a firearm to an unlicensed person with a delayed background check); (*see* Ex. 119 at 1) (citing Petitioner for failing to complete a background check). As the Court previously addressed, Petitioner has shown that it is indifferent to following the rules under the GCA. Holding a FFL is a privilege and not a right, and with that privilege comes the responsibility to adhere to the GCA rules and regulations. In sum, this factor likely weighs in Respondent's favor because Petitioner's repeated disregard to the GCA is a threat to public safety.

### IV.     CONCLUSION

The resolution of this Motion largely turns on the central question of whether Petitioner willfully violated the GCA, a question addressed under the first and most important *Winter* factor. Petitioner is an experienced licensee with knowledge of the GCA. Therefore, it is clear that Petitioner purposefully disregarded the GCA regulations by repeatedly violating the same regulations despite being given multiple opportunities to cure its mistakes. Accordingly, Petitioner has not demonstrated a likelihood of success nor serious questions going to the merits of its petition for de novo review. Petitioner also failed to offer evidence showing a likelihood of irreparable harm, and the balance of equities and the public interest weigh against restraining Respondent from revoking its FFL. Having considered all of the evidence and the arguments of the parties, and having individually considered the *Winter* factors with respect to claim for injunctive relief, the Court finds that Petitioner is not entitled to a preliminary injunction.

///

///

///

///

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Preliminary Injunction (Doc. 2) is **denied**.

Dated this 27th day of September, 2023.

*[signature]*
Honorable Steven P. Logan
United States District Judge